IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ANN POWERS § § § vs. § § § COMMISSIONER OF SOCIAL SECURITY § § § § | CIVIL ACTION 6:22cv340-JCB-KNM |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff initiated this lawsuit by filing a complaint seeking judicial review of the Commissioner's decision denying her application for Social Security benefits. The matter was referred to the undersigned for findings of fact, conclusions of law and recommendations for the disposition of the matter pursuant to 28 U.S.C. § 636(b)(1). Having considered Plaintiff's brief (ECF 16), the Commissioner's responsive brief (ECF 17) and Plaintiff's reply brief (ECF 18), the undersigned recommends that the Commissioner's final decision be **AFFIRMED** and that the above-styled lawsuit be **DISMISSED WITH PREJUDICE**.

### PROCEDURAL HISTORY

Plaintiff protectively filed an application for disability benefits and an application for supplemental security income on March 26, 2020, alleging disability beginning on September 30, 2018. The applications were denied initially on October 5, 2020, and again upon reconsideration on December 18, 2020. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted a hearing on October 18, 2021 and entered an unfavorable decision on January

6, 2022. Plaintiff sought review from the Appeals Council. On July 6, 2022, the Appeals Council denied the request for review. As a result, the ALJ's decision became that of the Commissioner. Plaintiff then filed this lawsuit on August 29, 2022, seeking judicial review of the Commissioner's decision.

## STANDARD

Title II of the Act provides for federal disability insurance benefits. Title XVI of the Act provides for supplemental security income for the disabled. The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See Davis v. Heckler*, 759 F.2d 432, 435 n. 1 (5th Cir. 1983); *Rivers v. Schweiker*, 684 F.2d 1144, 1146, n. 2 (5th Cir. 1982); *Strickland v. Harris*, 615 F.2d 1103, 1105 (5th Cir. 1980).

Title XVI of the Act provides for supplemental security income for the disabled. The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See Davis v. Heckler*, 759 F.2d 432, 435 n. 1 (5th Cir. 1983); *Rivers v. Schweiker*, 684 F.2d 1144, 1146, n. 2 (5th Cir. 1982); *Strickland v. Harris*, 615 F.2d 1103, 1105 (5th Cir. 1980).

Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of

credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d at 295 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). However, the Court must do more than "rubber stamp" the Administrative Law Judge's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook*, 750 F.2d at 393

(5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner must utilize a five–step sequential process. *Villa*, 895 F.2d 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id.*; see *Bowling*, 36 F.3d at 435 (citing *Harrell*, 862 F.2d at 475). Under the five–step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non–severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine

4

whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 404.1520(b)–(f). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id*. To obtain Title II disability benefits, a plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (*per curiam*).

## ALJ'S FINDINGS

The ALJ made the following findings in her January 6, 2022 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2. The claimant has not engaged in substantial gainful activity since September 30, 2018, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).

3. The claimant has the following severe impairments: obesity, chronic lumbar spine pain, scoliosis, generalized stiffness of her hands without subluxation, deformity, or effusion (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.25 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following: She is able to occasionally stoop, kneel, crouch, and crawl. She is able to frequently handle objects, bilaterally.

6. The claimant is capable of performing past relevant work as a server. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from September 30, 2018, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

## ADMINISTRATIVE RECORD

*Administrative Hearing*

Plaintiff testified at her hearing on October 18, 2021. She testified that she has a high school education with some college and, at the time of her hearing, she was working full-time at a retirement home as a personal care attendant. Plaintiff stated that she was planning to go part-time because it was getting to be too difficult working full-time. Her previous jobs included employment at a gas station, fast-food restaurants, a seafood restaurant, an auto parts retailer and home health businesses.

Plaintiff testified that she has back pain from her neck primarily down to her left leg and sometimes also to her right leg. She stated that the pain is so bad approximately twice per day that she has to stand still or sit to wait out the pain. Plaintiff also testified that her neck pain makes it difficult to turn to her head from side to side or to lift her left shoulder, making it difficult to dress and undress. She explained that she has numbness and tingling in her hands that also make it difficult to dress and undress or perform household chores. Plaintiff estimated that she can sit or stand for about 20 minutes at a time and walk approximately 2 blocks. Plaintiff stated that she does drive but her daughter goes with her to the store or to run errands. She testified that she has not been to a psychiatrist or counseling for depression and she does not take any medication for depression.

A vocational expert witness, Teri Hewitt, also testified at the hearing. Ms. Hewitt identified Plaintiff's past work to include: (1) personal attendant, DOT 309.674-014, light, SVP 3; (2) driver, retail, DOT 292.353-010, medium, SVP 3; (3) home health aide, DOT 355.674-014, medium, SVP 4; (4) food server, DOT 311.477-030, light, SVP 3; (5) fast food worker, DOT 311.472-010, light, SVP 2; and (6) pizza delivery driver, DOT 299.477-010, medium, SVP 2.

The ALJ presented a hypothetical of an individual with Plaintiff's age, education, and work experience, limited to light exertional demands and occasional stooping, kneeling, crouching, and crawling. Ms. Hewitt testified that the hypothetical individual could perform Plaintiff's past work as a fast-food worker and food server. If the hypothetical individual is additionally limited to frequent handling, bilaterally, Ms. Hewitt stated that the fast-food worker job would be ruled out because it requires constant reaching and handling. She opined that the food server job would still fit with the hypothetical. Ms. Hewitt identified the following light and unskilled jobs that would also be available for the hypothetical individual: (1) cashier, DOT 211.462-010, light, SVP 2, with 2 million jobs in the national economy; (2) deli cutter/slicer, DOT 316.684-014, light, SVP 2, with 100,000 jobs in the national economy; and (3) information clerk, DOT 237.367-018, light, SVP 2, with 70,000 jobs in the national economy. Ms. Hewitt stated that the hypothetical individual would not have any skills transferable to sedentary work.

If the hypothetical is changed to require additional morning and afternoon work breaks of 15 minutes each, Ms. Hewitt testified that the individual could not maintain competitive employment. In addition, she stated that the individual could not maintain competitive employment if she consistently misses two days of work per month.

7

*Medical Evidence*

Plaintiff was seen in the emergency room for back pain on March 19, 2018. On examination, she had full strength in all extremities, normal range of motion and a normal gait with muscle tenderness in the thoracic and lumbar spine. There were no neurological deficits on examination. Plaintiff was prescribed acetaminophen-codeine (Tylenol #3) for pain and methocarbamol (Robaxin) for muscle spasms and discharged. On May 19, 2018, Plaintiff went to the emergency room for left shoulder pain, leg pain, neck pain, and left foot pain following a car accident. She exhibited a normal gait with normal range of motion in the neck and spine. She did not show spinal or muscular tenderness. A head CT and X-rays of the chest, cervical spine and left foot were all normal. Dr. O'Patry diagnosed neck and left shoulder sprain and prescribed Tylenol #3 and Valium.

Plaintiff returned to the emergency room on January 20, 2019 with a left hand abrasion with soreness and tenderness. Plaintiff reported a mild fever and mild swelling. She was treated with hydrocodone-acetaminophen (Norco) and discharged. One month later, Plaintiff was involved in a motor vehicle accident and went to the emergency room on February 21, 2019 complaining of left lumbar back pain radiating down the left leg. Her musculoskeletal examination revealed muscle tenderness at L5 with normal range of motion and no edema or deformity. Lumbar X-rays were negative. Dr. Thomas Hubmer diagnosed lumbar sprain, left lumbar radiculopathy and motor vehicle collision. He prescribed acetaminophen-codeine and naproxen (Naprosyn) for pain and cyclobenzaprine (Flexeril) for muscle spasms.

Plaintiff received chiropractic care from Matthew Mishio, D.C., between March 6, 2019 and June 26, 2019 to address her back and neck pain resulting from the car accident. Dr. Mishio performed adjustments and administered ice therapy, electro-muscle stimulation, myofascial

release and deep tissue manual therapy. Plaintiff reported improvement in her pain levels in her neck, thoracic spine and lumbar spine on March 20, 2019. On March 29, 2019, she reported "significant improvement in the amount of pain felt on the left in the low back," and stated that the pain in her left and right upper back were "not as bad lately."[1] On April 11, 2019, Plaintiff reported that she was "finally seeing improvements in her neck and upper back region with improvement in her restrictions to movement and stiffness, and "not as much pain in her lower back but more [of] a stiffness."[2] Plaintiff stated she was doing better overall on April 25, 2019 and Dr. Mishio placed her on PRN status for myofascial release therapy. At her final return visit on June 26, 2019, Plaintiff stated that "her pain in the neck bilaterally hasn't been giving any significant symptoms lately," "the neck symptoms have abated," "her upper back pain bilaterally has been feeling quite a bit better," "her left low back pain hasn't given any significant symptoms lately," and she "feels pretty much back to normal regarding back pain."[3] Dr. Mishio determined Plaintiff had a good prognosis and instructed her to return as needed.

Plaintiff was seen in the emergency room on February 16, 2020 for an insect bite. She was negative for cellulitis or abscess. Dr. Godley diagnosed hyperglycemia, nausea and candidal dermatitis. He prescribed Lotrimin AF and Zofran. She returned to the emergency room on December 10, 2020 complaining of an injury to her right wrist following a fall in the shower. On examination, she exhibited tenderness to the ulnar styloid with weak grip and she could flex but she could not extend due to pain. An X-Ray of the right wrist was unremarkable. Dr. Sneed diagnosed a right wrist sprain and treated Plaintiff with a splint and NSAIDs. Plaintiff went back

---

[1] Administrative Record, ECF 15-7, at *28 (Bates stamp p. 381).
[2] *Id*. at *30 (Bates stamp p. 383).
[3] *Id*. at *32 (Bates stamp p. 385).

to the emergency room on February 26, 2021 after smashing her right index finger in a drawer. An X-Ray was normal. She was diagnosed with paronychia. It was excised, drained and dressed.

Dr. Kim Rowlands, a State agency consultant, reviewed the record and assessed Plaintiff's physical impairments on June 9, 2020. Dr. Rowlands concluded that Plaintiff's spine disorder was not a severe impairment.

Betty Eitel, Ph.D., performed a consultative psychological evaluation on July 2, 2020. Plaintiff reported concerns with depression and pain. She asserted experiencing depression most days with diminished interest and pleasure in most activities, sleeping difficulties, increased agitation, fatigue, feelings of worthlessness, diminished ability to concentrate, and indecisiveness. She also expressed anxiety and persistent thoughts about the seriousness of her health. Plaintiff's mood was euthymic, her affect was congruent and her facial expression was responsive. Dr. Eitel stated that Plaintiff displayed appropriate and logical thoughts and associations and no delusions, hallucinations, or unusual thoughts. Her ability to encode and retain material appeared slightly impaired. Plaintiff could not perform serial sevens but she could perform serial threes and spell "world" backwards, indicating a slight impairment in concentration. Her abstract reasoning abilities appeared below the normal range. Dr. Eitel diagnosed major depressive disorder, recurrent episode, mild, with anxious distress, and somatic symptom disorder, with predominant pain, moderate. She opined that Plaintiff's prognosis is guarded and that her disorders may remit to some degree with treatment. Dr. Eitel noted that Plaintiff's reported functioning remained the same for several years and is unlikely to improve significantly. She concluded that Plaintiff retains the ability to understand, carry out, and remember instructions for multiple steps and sustain concentration and persist in work-related activity at a reasonable pace. She stated that she can also

maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public, or deal with normal pressures in a competitive work setting.

A State agency consultant, Robert B. White, Ph.D., reviewed the record and completed an assessment on July 27, 2020 finding that Plaintiff's depressive disorder and somatic symptom disorder are not severe. On reconsideration, Catherine Blusiewicz, Ph.D., agreed with Dr. White's assessment.

Dr. Gregory Phillips performed a consultative examination on September 25, 2020. Plaintiff reported pain and discomfort through her back, radiating to the left leg, generalized stiffness, particularly in her hand joints, and diabetes managed with diet, exercise and weight management. On examination, Plaintiff exhibited full cervical range of motion and full range of motion in all joints. Spinal examination revealed some tenderness to pressure through the paraspinal muscles bilaterally and she was able to flex forward to forty-five degrees. Neurological examination was normal. An X-Ray of the lumbar spine showed twenty-five degrees of levoscoliosis between T11 and L4 but no acute abnormalities. Dr. Phillips identified Plaintiff's problems to include chronic low back pain secondary to scoliosis and advancing age, but without evidence of nerve root irritation or radiculopathy, diabetes mellitus type 2, controlled without evidence of vascular end-organ damage, and generalized stiffness of the joints in both hands without overt subluxation, deformity or effusion. Dr. Phillips opined that Plaintiff is limited in her ability to perform strenuous work-related activities such as standing, walking, lifting, carrying, and handling objects, but she is not limited in hearing, seeing or speaking.

Following Dr. Phillips' consultative examination, another State agency consultant, Dr. Scott Spoor, reviewed the record and assessed Plaintiff's physical limitations on October 1, 2020. Dr. Spoor opined that Plaintiff retains the physical residual functional capacity to occasionally lift

and carry 25 pounds, frequently lift and carry 10 pounds, stand and/or walk about 6 hours in an 8-hour workday and sit for about 6 hours in an 8-hour workday with unlimited push and pull within the lift and carry restrictions. Dr. Spoor did not find any postural or manipulative limitations. On reconsideration, Dr. Roberta Herman agreed with Dr. Spoor's assessment on December 16, 2020.

## DISCUSSION AND ANALYSIS

Plaintiff asserts two issues for review: (1) whether the ALJ properly articulated the level of "supportability" and "consistency," as directed by 20 C.F.R. § 404.1520c, when finding Dr. Phillips' opinion unpersuasive; and (2) whether the ALJ's reliance on unknown medical evidence and contradictory statements undermines substantial evidence support for the determination. Plaintiff argues that the ALJ found Dr. Phillips' opinion unpersuasive, but she failed to properly discuss the consistency and supportability of his opinion. More specifically, Plaintiff faults the ALJ for not adequately describing the relevance, consistency and supportability of emergency room records, for referring to records that pre-date the alleged date of disability, failing to discuss chiropractic notes, and deeming Dr. Phillips' assessment "vague" without further developing the record by seeking a more detailed assessment. Further, Plaintiff submits that substantial evidence does not exist to support the ALJ's finding that her mental health impairments are not severe because the ALJ references exhibits that do not exist. Plaintiff additionally argues that it is inconsistent for the ALJ to find that Plaintiff remains able to perform unskilled work, without finding a severe mental impairment, and that she included inconsistent statements in the decision concerning whether Plaintiff is able to perform past work.

In response, the Commissioner asserts that the ALJ properly evaluated Dr. Phillips' opinion. The Commissioner argues that the ALJ adequately explained his consideration of the medical record in his evaluation of Dr. Phillips' opinion and did not have a duty to recontact Dr.

Phillips for more detail. The Commissioner submits that Plaintiff has not shown any prejudice resulting from a failure to further develop the record. The Commissioner contends that the ALJ properly considered all of the evidence and found the limitations that are most persuasive and consistent with the record as a whole to be persuasive. Concerning the erroneous record citations and inconsistent statement in the ALJ's discussion finding Plaintiff's mental impairments non-severe, the Commissioner asserts that they are a scrivener's error without resulting prejudice. The Commissioner submits that the ALJ properly relied on Dr. Eitel's opinion that Plaintiff remains able to understand, carry out, and remember instructions for multiple steps and sustain her concentration and persist in work-related activity at a reasonable pace.

Plaintiff filed a reply brief asserting that it was inappropriate for the ALJ to consider the lack of a lengthy treatment relationship when discounting Dr. Phillips' opinion, particularly when finding the opinion of another one-time consultative examiner, Dr. Eitel, to be persuasive. Plaintiff contends that there is no clear bridge between the medical evidence cited by the ALJ and her conclusions. Additionally, Plaintiff argues that the errors and inconsistencies in the ALJ's analysis of her mental impairments cast doubt on whether the decision is supported by substantial evidence. Plaintiff submits that a diagnosis of major depressive disorder, by definition, is a severe impairment.

A.  *Consideration of Opinion Evidence*

The revised rules for the consideration and articulation of medical opinions apply to claims filed after March 27, 2017. 20 C.F.R. § 404.1520c. Plaintiff filed her applications on March 26, 2020. Pursuant to 20 C.F.R. § 404.1520c(a), the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."

The ALJ evaluates the persuasiveness of the medical opinions and articulates the consideration of medical opinions, but the ALJ is not required to explain the consideration of each factor that is considered. 20 C.F.R. § 404.1520c(b). The "supportability" and "consistency" factors are most important. *Id*. Concerning "supportability," the regulation provides "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion or prior administrative medical finding, the more persuasive the medical opinion or prior administrative medical finding will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion or prior administrative medical finding is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion or prior administrative medical finding will be." 20 C.F.R. § 404.1520c(c)(2).

After finding that Plaintiff's severe impairments include obesity, chronic lumbar spine pain, scoliosis, and generalized stiffness of her hands without subluxation, deformity, or effusion, the ALJ determined that these impairments do not meet or medically equal the severity of a listed impairment. The ALJ then considered Plaintiff's residual functional capacity ("RFC"). The ALJ summarized and considered the objective medical findings before turning to consideration of opinion evidence and prior administrative findings.

In her evaluation of Dr. Phillips' opinion that Plaintiff "is limited in her ability to perform strenuous work-related activities such as standing, walking, lifting, carrying, and handling objects," the ALJ considered its supportability, as that term is used in the applicable regulation, by reviewing the objective findings in Dr. Phillips' examination, including that Plaintiff "exhibited range of motion limitations in her abilities to flex and extend her lumbar spine, but she demonstrated full ranges of motion th[r]ough all of her joints," "her hands were somewhat stiff,

14

but she had full grip strength bilaterally," and "[s]he walked normally and she revealed full neurological senses."[4] The ALJ noted that the conclusion that Plaintiff is "limited" is vague and does not "include a vocationally specific set of abilities or limitations."[5] Further, Dr. Phillips did not provide "a detailed rationale for this brief evaluation summary."[6]

The ALJ then considered the consistency of Dr. Phillips' opinion with objective medical evidence in the record. Referring to specific record citations, the ALJ noted that the physical examinations in the record do "not reveal significant functional limitations, severe pain, or significant extremity deficits" and that the X-rays in the record similarly do "not identify significant abnormalities or spinal cord impingements."[7] For these reasons, the ALJ determined that Dr. Phillips' opinion was not persuasive.

Here, without using the specific terms "supportability" and "consistency," the ALJ properly considered whether Dr. Phillips' opinion was supported by objective medical evidence, whether he provided an explanation for his opinion and whether his opinion was consistent with the medical evidence in the record before he concluded that it was not persuasive. Plaintiff asserts that it was improper for the ALJ to refer to medical records prior to her alleged onset of disability. The medical records cited by the ALJ begin six months prior to the alleged onset of disability and continue for several years past that date. While the alleged onset date is the starting point, "the medical evidence is the primary element in the determination of onset of disability." *Spellman v. Shalala*, 1 F.3d 357, 361 (5th Cir. 1993). The emergency room visit six months prior to the alleged onset date is included in the cited references, but it was considered by the ALJ together with later records to find that "a series of physical examinations" and "a series of X-Ray scans" did not show

---

[4] Administrative Record, ECF 15-2, at *26 (Bates stamp p. 25).
[5] *Id*.
[6] *Id*.
[7] *Id*.

significant limitations, abnormalities, or spinal cord impingements.[8]  Plaintiff additionally faults the ALJ for not describing chiropractic notes, but she does not explain how those notes would have changed the outcome.  As set forth above, Plaintiff was briefly treated by a chiropractor following a car accident and she was released from his care with no significant symptoms and a good prognosis.

Finally, Plaintiff asserts that the ALJ did not develop the record because he did not seek out further explanation on Dr. Phillips' opinion that she is "limited" in her physical abilities.  An ALJ has a duty to fully and fairly develop the facts relating to a claimant's application for disability benefits.  *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  Reversal for the ALJ's failure to adequately develop the record, however, is only required if the claimant shows prejudice.  *Id*.  Ordering a consultative examination is a matter within the ALJ's discretion.  *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (per curiam) (citing *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) (per curiam)).  "An examination at government expense is not required 'unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision.' "  *Id*.  Stated differently, if necessary for an ALJ to make the disability decision, he should order a consultative examination at government expense.  *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989).

The ALJ determined that a consultative examination was needed and a physical examination was performed by Dr. Phillips.  As explained above, the ALJ determined that his opinion that Plaintiff is "limited" is not supported by his examination findings or consistent with the objective findings in the record.  The ALJ also reviewed the opinions of the State agency consultants who, unlike Dr. Phillips, provided opinions concerning a detailed assessment of

---

[8] *Id*.

16

Plaintiff's vocational abilities and limitations based upon the medical record and explanations for their opinions. Both Dr. Spoor and Dr. Herman concluded that Plaintiff is limited to light work. These facts do not show that a further consultative examination or assessment was necessary for the ALJ to make a disability decision. Plaintiff has not shown that the ALJ's RFC finding is erroneous.

### B.   *Mental Impairments*

Plaintiff asserts that the ALJ's finding that her mental impairments are not severe is not supported by substantial evidence. The burden is on the claimant to establish a severe impairment. *Anderson v. Sullivan*, 887 F.2d at 632–33. Severe impairments include "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.20(c). An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984). If the ALJ applies the incorrect legal standard when assessing severe and non-severe impairments, reversal is required. *Id*. at 1106.

The ALJ noted that Plaintiff "has not sought or required mental health treatments, counseling therapy, in-home supports, psychiatric hospitalizations, or intensive psychological treatments," but a consultative examination was ordered to fully evaluate her mental status for work.[9] Plaintiff acknowledged at her hearing that she has not sought or received any treatment for depression. The ALJ considered Dr. Eitel's examination findings and her opinion that Plaintiff retains the ability to understand, carry out, and remember instructions for multiple steps, sustain

---

[9] *Id*. at *21 (Bates stamp p. 20).

17

her concentration and persist in work-related activity at a reasonable pace, maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public, or deal with normal pressures in a competitive work setting. As explained by the ALJ, Dr. Eitel's opinion is not contradicted by any treating source records and multiple medical visits fail to document severe symptoms of depression or other mental status deficits. Further, the State agency consultants reviewing the record found no severe mental impairment based on only mild limitations in understanding, remembering, and applying information and concentrating, persisting, or maintaining pace, with no limitations in interacting with others or adapting or managing herself. Plaintiff does not point to evidence in the record showing more than a minimal effect on her mental ability to work.

Plaintiff complains that the ALJ's analysis includes an erroneous reference to medical exhibits that do not exist: Exhibit 11F, pg. 5, Ex. 12F, pgs. 3–6, Ex. 13F, pgs. 2–6, Ex. 16F, pgs. 4, 6, 13, Ex. 27F, pg. 3, Ex. 28F, pg.1.[10] The reference is made following a statement by the ALJ that "[t]he results of numerous medical visits consistently describe mostly normal cognitive and social abilities, further supporting the accuracy of these assessments."[11] Two paragraphs earlier, the ALJ provided the correct citations when stating, "[d]uring numerous office visits, the claimant did not exhibit or describe severe symptoms of depression or mental status deficits for work (Exhibit 1F, pgs. 3, 8, 13–14, Ex. 3F, pgs. 9, 18–19, 22, Ex. 7F, pgs. 37–38)."[12]

Here, the referenced exhibits are an apparent typographical error, with the correct citations appearing in close proximity. "Procedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). An administrative decision will

---

[10] *Id*. at *22 (Bates stamp p. 21).
[11] *Id*.
[12] *Id*.

18

not be vacated "unless the substantial rights of a party have been affected." *Id.* Plaintiff has not shown that her substantial rights were affected by the typographical error.

Plaintiff also alleges that the ALJ's reference to unskilled work is inconsistent with a finding of no severe impairment. The ALJ concluded that "[t]he State agency medical consultants' prior administrative findings are persuasive because the evidence as a whole, including evidence received at the hearing level, supports a finding that the claimant remains able to work at the unskilled level."[13] This statement does not conclude that Plaintiff is only capable of unskilled work. There is no limitation in the residual functional capacity finding limiting Plaintiff to unskilled work. Plaintiff has not shown error.

It is noted that Plaintiff alleges another typographical error unrelated to the finding that she does not have a severe mental impairment. The alleged error appears in the section of the ALJ's opinion concerning whether she can perform her past relevant work as a server and the vocational expert's testimony. The ALJ states that, in response to a hypothetical question, the "vocational expert responded that the individual would be unable to complete past work as the demands of said past work would exceed the residual functional capacity," but later states "the claimant is able to perform it as generally performed."[14] It is unclear whether there is a typographical error or the ALJ is distinguishing between the food server position as it was performed by Plaintiff versus how it is generally performed. If it is an error, Plaintiff has not shown that her substantial rights have been affected. The vocational expert witness expressly testified that the hypothetical individual could perform work as a food server, as well as three other identified jobs.

---

[13] *Id*. at *22 (Bates stamp p. 21).
[14] *Id*. at *27–28 (Bates stamp p. 26–27).

For the reasons above, the ALJ applied the correct legal standards and the decision is supported by substantial evidence. The Commissioner's decision should be affirmed and the complaint should be dismissed.

### RECOMMENDATION

It is hereby **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED** and that this social security action be **DISMISSED WITH PREJUDICE**.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b). The written objections shall not exceed eight pages. Local Rule CV-72(c).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 9th day of February, 2024.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE